MERTENS, Respondent, vs. LAKE SHORE YELLOW CAB & TRANSFER COMPANY, Appellant.

*April 4—May 8, 1928.*

*Automobiles: Pedestrian crossing a street: Duty to make observation for approaching cars: Contributory negligence.*

1. In an action for damages for personal injuries sustained by a pedestrian while crossing a street when struck by defendant's cab, the pedestrian cannot be permitted to say that he looked at a time when he had a clear vision for more than 250 feet, when, if he had looked, he must have seen the cab, which was in plain sight, since under such circumstances a person is presumed not to have looked or to have heedlessly submitted himself to danger.  pp. 647, 648.

2. Ordinary care requires that a pedestrian crossing a street look for approaching automobiles before leaving the zone of safety; and in this case the failure of the plaintiff to make an observation prior to the time he entered the zone of danger constituted contributory negligence as a matter of law.  p. 649.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge.  *Reversed.*

Action by *William B. Mertens* against the *Lake Shore Yellow Cab & Transfer Company* to recover damages for personal injuries sustained by being struck with one of defendant's yellow cabs on the street.  From a judgment in favor of plaintiff defendant appeals.

For the appellant there was a brief by *Roy S. Stephenson* and *Clarence J. Fisher,* and oral argument by *Mr. Stephenson* and *Mr. Chester D. Richardson,* all of Kenosha.

For the respondent there was a brief by *Foley, Brach & Colbert* of Racine, and oral argument by *J. J. Foley* and *Cornelius M. Colbert.*

OWEN, J.  Sixth street in the city of Racine extends in an easterly and westerly direction.  On said street there is a bridge, commonly known as West Sixth street bridge, 152.4 in length.  The street is 36 feet between curbs.  The bridge is 17.6 between the girders.  The cement sidewalk ends 13 feet from the end of the bridge.  A wooden walk then

extends obliquely from the end of the cement walk to a wooden walk across the bridge.

On the 15th day of September, 1925, plaintiff was shopping in a store located on the south side of Sixth street and at the east end of the bridge. The west side of this store building was flush with the west end of the concrete walk on the south side of Sixth street, at the east end of the bridge. Having completed his errand, the plaintiff came out of the store at 4 o'clock in the afternoon and proceeded hurriedly towards his home, which is west and north of the bridge. He proceeded in a northeasterly direction, intending to cross the street before reaching the bridge and proceed across the bridge on the north side thereof. From the door of the store to the end of the bridge is in the neighborhood of thirty-five feet. Just before reaching the bridge he stepped from the oblique walk intending to cross the street. He states that just as he came even with the south girder of the bridge he looked in a westerly direction and saw no automobile coming. At this point he had a clear vision to the west for a distance of more than 250 feet. He then proceeded to cross the street, and when he had gone a distance of not to exceed twelve feet he was struck by defendant's yellow cab. He testified that he was walking between three and one half and four miles per hour. The question presented is whether he was guilty of contributory negligence.

It is apparent that if he had looked when he came flush with the girder of the bridge, he was in the exercise of that degree of care which the law requires. But it is also apparent that if he had looked he would have seen the cab coming. He had a clear vision for more than 250 feet. He was struck within twelve feet from the point where he testified he made his observation. Unless the cab was going more than twenty times as fast as the plaintiff, it was within the range of his vision when he claims he looked. There is nothing in the record to indicate or to justify an inference that the cab was approaching at any such speed. This court

has held many times that such a situation does not present a jury question. Under such circumstances a person is presumed not to have looked, or to have heedlessly submitted himself to the danger. He is not permitted to say that he looked when, if he had looked, he must have seen that which was in plain sight. *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N. W. 179; *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148. Plaintiff must therefore be held to have been guilty of contributory negligence, unless he can be relieved therefrom by the fact that he looked at some point between the time of leaving the store and the time when he said he looked when he came flush with the girder.

It is impossible to tell just where the plaintiff looked. The plaintiff's case shows that he marked on an Exhibit C (apparently a photograph of the premises) where he was when he looked. We find detached portions of photographs among the exhibits, but we have been unable to patch them together so as to make out Exhibit C, and we are in the dark as to the precise point at which he claims to have made his prior observation. However, it does appear that any observation made during that time must have been obscured by the trestlework on the south side of the bridge. There was no point between the time he left the store and the time he arrived flush with the south girder of the bridge that he could have obtained an unobstructed view to the west. West Sixth street is one of the main streets of the city of Racine and the automobile traffic thereon is heavy. This was known to the plaintiff. Under such circumstances he had no right to rely upon any observation made prior to the time he entered the zone of danger.

Courts have said that the look-and-listen rule does not apply with the same rigor to pedestrians crossing city streets that it does to pedestrians crossing railroad and street-car tracks. These views were first expressed in the early days of

automobile traffic, when such traffic was not as heavy and when the operator of an automobile was not in especial public favor.  Year after year, however, we find greater congestion of automobile traffic in city streets and the danger to the pedestrian constantly increasing.  Changing conditions have laid upon him a greater duty with reference to his own safety when he attempts to cross city streets.  As a practical proposition, his duty to look for approaching automobiles is more imperative when attempting to cross a main city street than when crossing a railroad or a street railway track, because the danger is more constant.  Railroad trains pass at rather infrequent intervals.  Street cars pass with greater frequency than railroad trains; but, compared to automobiles, the passing of either is a rare occurrence.  While the automobile is more pliable in its management to the end that a collision may be avoided, nevertheless the far greater frequency with which automobiles pass, as a practical proposition, renders the crossing of a busy city street scarcely less dangerous than the crossing of a railroad or a street-car track.  While it was formerly said that the presence of a railroad track was a warning of danger, it must be admitted that the dangers attendant upon the crossing of a busy city street are far more numerous, even though they be less serious.  At any rate the time has come when ordinary care requires the pedestrian to look for approaching automobiles before he leaves the zone of safety.  In view of the speed at which automobiles are permitted to move on city streets, the pedestrian should not be permitted to rely upon an observation made so long prior to the entry of the zone of danger, and this is especially true where the line of vision is met by obstructions such as the trestlework on this bridge.  In any view we may take of the evidence, it seems plain that the plaintiff was guilty of contributory negligence as a matter of law, and that the judgment should be reversed and the cause remanded with instructions to dismiss the action.

*By the Court.*—So ordered.